JAMARCUS SAM                                      CIVIL ACTION NO. 16-0124

VERSUS                                           JUDGE ELIZABETH FOOTE

CITY OF OPELOUSAS, ET AL.                        MAGISTRATE JUDGE WHITEHURST

## MEMORANDUM RULING

Before the Court is a motion for summary judgment filed by Defendants, the City

of Opelousas ("the City") and Officer Shone Chase Richard ("Richard"). Record

Document 24. Plaintiff Jamarcus Sam brought this action against Defendants for claims

arising out of his detention by Officer Richard. Record Document 3. For the reasons

discussed below, Defendants' motion [Record Document 24] is **GRANTED**. All federal

claims against Officer Richard, the City of Opelousas, and the City's insurer are hereby

**DISMISSED with prejudice**. All state law claims are **DISMISSED without**

**prejudice**.

### I. Background

Plaintiff Jamarcus Sam filed this motion against Richard and the City after he was

detained by police in 2015. Record Document 3. The action was originally brought by

Annie Sam on behalf of her minor son Jamarcus, but when he turned 18, he was

substituted as Plaintiff. Record Document 19. The parties largely agree on the facts.

Record Document 28, p. 4 ("plaintiff does not seriously dispute the recitation of facts

set forth by the defendants"). On February 10, 2015, Plaintiff went to the Walmart store

in Opelousas with his friends. Record Document 24-1, p. 1. One friend, Eddie Stagg, allegedly shoplifted a jacket from the store. Id. The group of friends left the store and a Walmart employee called police to report shoplifting by a group of juveniles. Id. Officer Richard responded to the call at Walmart and was advised that the suspects had left the store. Id. Officer Richard arrived at the store and saw a group of juveniles, including Plaintiff, running through a nearby parking lot. Id. Another police officer ordered the juveniles to stop running and Plaintiff complied and laid down on the ground when police said they would release dogs. Record Document 24-2, p. 6. Officer Richard approached Plaintiff, slapped him in the face, kneed him in his left hip, handcuffed him, and shoved him against the side of the police car. Id., p. 7. Officer Richard then put both Plaintiff and Stagg in his patrol car and took them back to Walmart, where Stagg was identified as the alleged shoplifter. Officer Richard took both young men to the police station and called Plaintiff's mother to come get him. From detention to release, the whole episode lasted about an hour. Id., pp. 6-7.

Plaintiff asserts claims against Officer Richard under 42 U.S.C. § 1983 for excessive force and unlawful arrest, in violation of the Fourth Amendment, and for violations of the First, Eighth, and Fourteenth Amendments. Record Document 3. He brings claims against the City for vicarious liability for the actions of Officer Richard and for independent liability for failure to properly investigate the incident, failure to properly train and supervise Officer Richard and "failure to enact or enforce a policy which would have reasonably prevented the incidents complained of herein." Id., p. 5.

## II. Discussion

### A. Standard of Review

Federal Rule of Civil Procedure 56(a) directs that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[1] Summary judgment is appropriate when the pleadings, answers to interrogatories, admissions, depositions, and affidavits on file indicate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). When the burden at trial will rest on the non-moving party, the moving party need not produce evidence to negate the elements of the non-moving party's case; rather, it need only point out the absence of supporting evidence. See id. at 322-23.

If the movant satisfies its initial burden of showing that there is no genuine dispute of material fact with the motion for summary judgment, the nonmovant must demonstrate that there is, in fact, a genuine issue for dispute at trial by going "beyond the pleadings" and designating specific facts for support. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994). "This burden is not satisfied with 'some metaphysical doubt as to the material facts,'" by conclusory or unsubstantiated allegations, or by a mere scintilla of evidence. Id. (quoting Matsushita Elec. Indus. Co. v. Zenith Radio

---

[1] Rule 56 was amended effective December 1, 2010. Per the comments, the 2010 amendment was intended "to improve the procedures for presenting and deciding summary judgment motions and to make the procedures more consistent with those already used in many courts. The standard for granting summary judgment remains unchanged." Therefore, the case law applicable to Rule 56 prior to its amendment remains authoritative, and this Court will rely on it accordingly.

Corp., 475 U.S. 574, 586 (1986)). However, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1985) (internal citations omitted); Reid v. State Farm Mut. Auto Ins. Co., 784 F.2d 577, 578 (5th Cir. 1986) (the court must "review the facts drawing all inferences most favorable to the party opposing the motion"). While not weighing the evidence or evaluating the credibility of witnesses, courts should grant summary judgment where the critical evidence in support of the nonmovant is so weak and tenuous that it could not support a judgment in the nonmovant's favor. Little, 37 F.3d at 1075.

B. Qualified Immunity

Plaintiff alleges that Officer Richard was acting under color of state law when he detained Plaintiff and that he is liable under § 1983 for excessive force and unlawful arrest in violation of the Fourth Amendment. Officer Richard argues that he is entitled to qualified immunity on all claims.

Government officials are protected from liability under § 1983 "unless the official's conduct violated a clearly established constitutional right." Pearson v. Callahan, 555 U.S. 223, 232 (2009). The Supreme Court has "repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage in litigation." Hunter v. Bryant, 502 U.S. 224, 226 (1991).

Qualified immunity is a two-step analysis: (1) whether the facts alleged make out a violation of a constitutional right, and (2) whether the right at issue was clearly

established at the time of the defendant's alleged misconduct. Saucier v. Katz, 533 U.S. 194, 201 (2001). For a right to be clearly established, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Club Retro, L.L.C. v. Hilton, 568 F.3d 181, 194 (5th Cir. 2009). The focus of this inquiry is fair warning. Id. Although this analysis used to be a mandatory two-step process, Pearson established that lower courts have discretion to address these prongs in whichever order is most appropriate in the case at hand. 555 U.S. at 236. "[T]here will be cases in which a court will rather quickly and easily decide that there was no violation of clearly established law before turning to the more difficult question whether the relevant facts make out a constitutional question at all." Id. at 239. Thus, where appropriate, a court may find that qualified immunity exists on the basis of either prong. Once a defendant properly pleads qualified immunity, the burden shifts to the plaintiff to rebut the defense. Salas v. Carpenter, 980 F.2d 299, 306 (5th Cir. 1992). Qualified immunity protects "all but the plainly incompetent." Malley v. Briggs, 475 U.S. 335, 341 (1986).

C. Excessive Force

Plaintiff claims that Officer Richard detained him with excessive force in violation of the Fourth Amendment. On this claim, the parties focus on the first prong of the qualified immunity analysis: whether the facts constitute excessive force in violation of the Constitution. Defendants argue that the facts show a de minimis injury that is insufficient to create a constitutional claim. Record Document 24-2, p. 13.

In the Fifth Circuit, it is clearly established law that in order to prove a claim of excessive force in violation of the Fourth Amendment, a plaintiff must show: "(1) an injury, which (2) resulted directly and only from the use of force that was clearly excessive to the need; and the excessiveness of which was (3) objectively unreasonable." Ikerd v. Blair, 101 F.3d 430, 433-34 (5th Cir. 1996). An injury "does not occur every time an officer touches someone...some amount of force or contact would be too nominal to constitute a constitutional violation. When the force used is insufficient to satisfy the legal standard necessary for recovery, the amount of force is de minimis for constitutional purposes." Id. at 434. Thus, Plaintiff must show more than a de minimis injury in order to prove an excessive force claim.

In Jamison v. City of Shreveport, the plaintiff was brought to the ground by a police officer's "straight arm bar takedown" and as a result had a knot on his head, skin burns, scrapes and bruises. 2016 WL 3920439, at *1 (W.D. La. July 18, 2016). He did not seek medical treatment. Id. at *2. The court concluded that these injuries were de minimis injuries that did not rise to the level of excessive force in violation of the Constitution and granted summary judgment for the officer. Id. at *4. Similarly, in Martinez v. Nueces County, the plaintiff alleged that he was pepper sprayed, tased, and beaten by police officers while handcuffed on the floor of his home. 2015 WL 65200, at *10 (S.D. Tex. Jan. 5, 2015). The court reasoned that even though this use of force was unreasonable and excessive, it was still a de minimus injury because the plaintiff required no medical treatment and demonstrated no long-term effect. Id. The court

granted summary judgment to the police officers. Id. at *12. Plaintiff points to no contradictory cases showing that injuries like his have been found sufficient to prove an excessive force claim.

Plaintiff alleges that he was slapped in the face, kneed in the side near his hip bone which scraped his skin against the concrete, shoved against a police car, and handcuffed. Officer Richard disputes these actions, but agrees he detained and handcuffed Plaintiff. Record Document 24-2, p. 7. Plaintiff did not seek medical attention following the incident, and stated in his deposition that his mother wanted him to go to the hospital "but I said it wasn't that serious. It was like I got in a regular fight...But it didn't mess me up physically. It just changed my mind frame of how I looked at cops." Record Document 24-3, p. 32. Plaintiff did see a doctor about a month or so later, but he testified that "I knew it wasn't serious because it doesn't hurt. It went away in a few days." Id., p. 35. Viewing Plaintiff's statements about his injuries in the light most favorable to him, Plaintiff's injuries are de minimus and insufficient to make out a constitutional violation as a matter of law. Therefore, Officer Richard is protected by qualified immunity. Plaintiff's excessive force claim against Officer Richard is **DISMISSED** with prejudice.

D. Unlawful Arrest

Plaintiff also argues that he was unlawfully detained and/or unlawfully arrested in violation of the Fourth Amendment. Specifically, Plaintiff contends that his continued detention after Stagg was identified as the alleged shoplifter was either an

unreasonable and unlawful detention, or alternatively, that it converted the detention into an arrest for which there was no probable cause. Record Document 28, p. 6. Officer Richard argues that the detention was a lawful investigatory stop. Record Document 24-2, pp. 14-15.

When a police officer has a reasonable suspicion that a person is committing or has just committed a crime, he may make an investigatory stop of that person. Terry v. Ohio, 392 U.S. 1, 21 (1968). The parties do not dispute that Officer Richard had reasonable suspicion that Plaintiff had shoplifted from Walmart. Walmart had called police to report that a group of juveniles had shoplifted, and Plaintiff was detained moments later in a group of juveniles running away from Walmart. There is no length of time that automatically converts an investigative stop into an arrest. United States v. Sharpe, 470 U.S. 675, 685 (1985). Instead, each individual detention must be evaluated on a case-by-case basis for reasonableness. Id. Furthermore, handcuffing a suspect or the use of some physical force in the detention does not necessarily convert an investigatory stop into an arrest. United States v. Campbell, 178 F.3d 345, 349 (5th Cir. 1999) ("using some force on a suspect, pointing a weapon at a suspect, ordering a suspect to lie on the ground, and handcuffing a suspect...do not automatically convert an investigatory detention into an arrest requiring probable cause").

Plaintiff was placed in handcuffs and transported in the police car from the parking lot where he was detained to Walmart for an identification, where Stagg was identified as the alleged shoplifter. Id., p. 7. Plaintiff asserts no claim with respect to

this portion of his detention. After Plaintiff had been cleared of suspicion, Officer

Richard transported Plaintiff to the police station, where his mother was called to pick

him up. Id. This is the portion of his detention that Plaintiff claims was unreasonable.

From start to finish, Plaintiff was detained roughly one hour. Id. Officer Richard testified

in his deposition that after Stagg was identified as the alleged shoplifter, he continued

to detain Plaintiff because he had not decided whether to charge Plaintiff with illegally

crossing the highway. Record Document 28-2, p. 3. He also said that "being he's a

juvenile, he has to be brought back to the station." Id., p. 4. Defendants further point

out that by the time Stagg was identified as the alleged shoplifter, it was only a few

minutes before the Opelousas juvenile curfew would make it illegal for Plaintiff to be

out. Record Document 24-2, p. 16, n. 6. Officer Richard had originally detained Plaintiff

on suspicion of shoplifting, and also believed he had violated city ordinance against

crossing the highway on foot. He knew that Plaintiff was a minor, and that the City's

juvenile curfew started at 11:00 p.m. At about 10:45 p.m., having ascertained Plaintiff's

innocence of shoplifting, Officer Richard made the decision to take a minor to the police

station and release him into his mother's custody instead of releasing him onto the

street shortly before curfew. In the totality of the circumstances, the Court cannot say

that Officer Richard's decision to continue detaining Plaintiff long enough to ensure he

would get safely home makes the stop unreasonable. Nor does this minor extension of

the detention, the total length of the detention, or the fact that Plaintiff was handcuffed

convert his detention into an arrest. Officer Richard's detention of Plaintiff was a lawful

investigatory stop.

Moreover, in order to overcome a qualified immunity defense, Plaintiff must show that there exists clearly established law that a reasonable officer in Officer Richard's shoes would have understood he was violating with this detention. Plaintiff has offered, and the Court can find, no clearly established law stating that if a police officer extends by a few minutes the otherwise reasonable detention of a minor in order to call his mother and send him home, the officer has acted objectively unreasonably. Indeed, one could easily imagine a different plaintiff arguing the opposite in a similar circumstance: that releasing a minor onto the streets a few minutes before curfew, instead of helping him get safely home, is unreasonable. In any event, Plaintiff has identified no clearly established law that was violated in this instance. Officer Richard is therefore protected by qualified immunity, and Plaintiff's unlawful detention claim is **DISMISSED** with prejudice.

E. Violations of the First, Eighth, and Fourteenth Amendment

Although Plaintiff's complaint makes bare-bones allegations of First, Eighth, and Fourteenth Amendment violations, he never offers any facts supporting those allegations. Plaintiff's opposition to the motion for summary judgment does not discuss these claims at all. To the extent that Plaintiff invokes the Fourteenth Amendment as the mechanism for applying the Fourth Amendment to the states, for the excessive force and unlawful detention claims above, the Court acknowledges its applicability. Otherwise, there being no factual basis or competent summary judgment evidence to

support such claims, all claims against Officer Richard for violation of the First, Eighth, or Fourteenth Amendment are **DISMISSED** with prejudice.

F. Claims Against the City

Plaintiff asserts claims against the City for (1) vicarious liability for the actions of Officer Richard and (2) independent liability for failure to properly investigate the incident, failure to properly train and screen police officers, and failure to enact a policy that would have prevented this incident.

A municipality may be liable under § 1983 when an action taken pursuant to an official policy causes a constitutional harm. Monell v. Dept. of Social Servs., 436 U.S. 658, 691 (1978). A municipality may not, however, be vicariously liable for the actions of its employees. Id; see Peterson v. City of Fort Worth, 588 F.3d 838, 847 (5th Cir. 2009) ("It is well-established that a city is not liable under § 1983 on the theory of respondeat superior."). To establish liability under § 1983, a plaintiff must show that: "(1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." Peterson, 588 F. 3d at 847. When there has been no underlying violation of a constitutional right by a municipal employee, there can be no municipal liability as a matter of law. City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986) ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point."). Because the Court concludes that Officer Richard committed no constitutional

violation, Plaintiff's claims against the City must be **DISMISSED** with prejudice. Plaintiff

has also named the City's insurer as a Defendant. Record Document 3, p. 2. Because all

claims against the City are dismissed, all claims against the City's insurer are likewise

**DISMISSED** with prejudice.

    G. <u>State Law Claims</u>

Finally, Plaintiff alleges several claims against Defendants under state law,

including claims for negligence, assault, battery, "excessive force and/or unlawful

arrest," and intentional infliction of emotional distress, "among other acts of

negligence." Record Document 3, p. 3. Because the Court has dismissed all of Plaintiff's

claims arising under federal law, it declines to exercise supplemental jurisdiction over

Plaintiff's state law claims. 28 U.S.C. § 1367(c). Plaintiff's state law claims are

**DISMISSED** without prejudice.

**III. Conclusion**

For the reasons discussed above, Defendants' motion for summary judgment

[Record Document 24] is **GRANTED**. All federal claims against Officer Richard, the City

of Opelousas, and the City's insurer are hereby **DISMISSED with prejudice**. All state

law claims are **DISMISSED without prejudice**.

    **THUS DONE AND SIGNED** in Shreveport, Louisiana, this ___ day of

_____, 2017.

                              _____

                              Elizabeth Erny Foote
                              United States District Judge